NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JAMES KNIGHT,

        Petitioner,

        v.

CHARLES WARREN, et al.,

        Respondents.

Civil Action No. 12-7670 (RMB)

**OPINION**

---

This matter comes before the Court upon Petitioner's motion, see Docket Entry No. 11, seeking reconsideration of this Court's prior Opinions and Orders.

Upon Petitioner's submission of his § 2254 petition, the Court reviewed the same and noted the unusually lengthy period of Petitioner's post-conviction relief ("PCR") process. Reading that jointly with the long gap between Petitioner's completion of the PCR process and his filing of the Petition at bar, the Court – in order to verify the timeliness of the Petition – directed Petitioner to clarify when his PCR appeals at the Appellate Division and the Supreme Court of New Jersey were "properly filed" and "pending."[1]

---

[1] For the purposes of calculating a litigant's period of limitations, the word "pending" and the phrase "properly filed" are terms of art having a technical meaning qualitatively different from that a layperson may perceive reflecting solely on the dates when the first document is mailed to the trial court and when the highest court issues its ruling. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80 (3d Cir. 2013). Rather, as detailed in Artuz v. Bennett 531 U.S. 4, 8-9 (2000),

Because Petitioner failed to respond to the Court's directive, the Court dismissed the Petition as untimely. See Docket Entries Nos. 8 and 9. Upon the Court's entry of that ruling, Petitioner filed the motion at bar, see Docket Entry No. 11, and accompanied it by his response, see Docket Entry No. 10 ("Response"), addressing the Court's directive, which, by then was untimely.

Petitioner's Response addressed solely the issue of his delay in filing his PCR appeal with the Appellate Division, leaving the issue of whether there was a delay in Petitioner's

---

and elaborated upon in Evans v. Chavis, 546 U.S. 189 (2006), the statutory tolling does not apply:

(1) starting from the point in time when, under the state law, an inmate's time to appeal denial of PCR (or to seek certification as to afformance of such denial) expires and until the point in time when the inmate's application to file such appeal out of time (or to seek such certification out of time) is granted, see Jenkins, 705 F.3d at 86-88 and nn.6 and 8; and, in addition,

(2) starting from the point in time when a not-perfected PCR application to the Law Division (or an appeal to the Appellate Division as to denial of PCR, or an application for certification as to affirmance of denial of PCR) was received/recorded by the state courts and until the point in time when the inmate's submission is duly perfected under the requirements posed by the state law. See id. at 88, n. 11 ("[W]e note that [the inmate's PCR submission] was not properly filed [within the meaning of Artuz] until he perfected it").

Under New Jersey Court Rule 2:4-1(a), the time for filing a notice of appeal with the Appellate Division is forty five days, and a petition for certification must be filed with the Supreme Court of New Jersey within twenty days from the date of the Appellate Division's adverse ruling, see N.J. Ct. R. 2:12-3.

2

filing of his application for PCR certification with the Supreme Court of New Jersey unaddressed. However, the information provided in the Response, albeit incomplete, is sufficient for this Court to rule on Petitioner's motion, without reaching and ruling on the facts that might be associated with the final stage of Petitioner's PCR process.

In his Response, Petitioner stated:

> On November 15, 2005, after [using] 32 days [of his one-year AEDPA period], Petitioner filed [his PCR with the Law Division], thereby [statutorily] tolling [his] one-year [AEDPA period. That] . . . PCR [application] was denied by [the Law Division on] May 15, 2009. . . . [O]n October 7, 2009, [that is, more than four and a half months later], Petitioner filed a notice of appeal [with the Appellate Division. Because the notice of appeal was not filed within the 45-day time limit [i.e.,] before June 29, 2009, . . . Petitioner concedes [that, unless his AEDPA] one-year [period] was not [deemed] tolled during [the resulting] 99-day [delay] [his § 2254] petition [is] untimely. However, [he maintains that this 99-day period should be included in the statutory tolling because] the . . . Appellate Division granted [his nunc pro tunc] motion . . . . [He maintains that,] if New Jersey courts have decided to [grant his nunc pro tunc motion, this Court] should respect that decision by [granting him statutory] tolling . . . . Alternatively, if [he] is not entitled to statutory tolling, [he] asserts that he is entitled to equitable tolling [because, if Appellate Division granted his nunc pro tunc motion, it must mean that he] exercised the requisite level of diligence required for the purposes of equitable tolling. [He also maintains he was subjected to] extraordinary circumstance [since the Office of Public Defender experienced] backlog, staff reduction and an overwhelming caseload, all circumstances beyond Petitioner's control.

Docket Entry No. 10, at 2-5 (quotation marks omitted).

In addition, Petitioner conceded that:

3

>     [additional] 322 days [of Petitioner's AEDPA period]
>     ran . . . between January 13, 2012, (when his PCR
>     appeal became final) and November 30, 2012, when
>     Petitioner handed his petition to prison officials.

Id. at 2, n.1.

Both Petitioner's arguments raised in the Response were expressly addressed and rejected, as meritless, by the Court of Appeals in its seminal Jenkins decision.

As the Jenkins Court pointed out:

> [T]he nunc pro tunc title of [Petitioner's notice of
> PCR appeal was, de facto,] a misnomer; in reality,
> [Petitioner filed [nothing but] a motion to extend
> [his] time to file a [notice] of appeal . . . . [While
> the state court]  frequently grants . . . motions to
> extend the time to . . . appeal, which it sometimes
> characterizes as . . . nunc pro tunc [motions,
> Petitioner's PCR appeal] was not properly filed [and,
> thus, had no statutory tolling effect until the time
> when the state court granted his nunc pro tunc motion
> and, in addition,] until he perfected it.

Jenkins, 705 F.3d at 87-88 and n.11; accord Knight v. Lagana, 2013 U.S. App. LEXIS 13069 (June 14, 2013) (statutory tolling cannot include the appellate PCR period since the time to appeal expired under the state law, and until the state court grants the litigant's nunc pro tunc motion, and the litigant duly perfects his PCR appeal); see also Webster v. Adm'r N.J. State Prison, 2013 U.S. App. LEXIS 25719, at *2 (3d Cir. N.J. Oct. 25, 2013) ("Assuming for the sake of argument that [Petitioner's] PCR [applications at all three levels of the state court] tolled the federal period of limitations while they were pending [within the meaning of Artuz and Evans], there are at least two undisputed

4

time periods during which nothing was pending in the state courts: the period after which [Petitioner's] time to appeal denial of] PCR [by the Law Division] expired, and before the Appellate Division granted [his motion] to appeal nunc pro tunc (26 days), and the similar period following the denial of [Petitioner's other request for PCR [denied by the Law Division, where the gap-time in appeal yielded] 14 days").

Correspondingly, here, Petitioner's one-year ARDPA period was depleted, at the very least, by the span of time from June 29, 2009 (when Petitioner's time to seek appellate PCR review expired under the state court rules) and until the date when the Appellate Division *actually granted* his nunc pro tunc motion *and*, in addition, he perfected his appeal. Since Petitioner states that he filed his nunc pro tunc motion on October 7, 2009, it is evident that said motion could not have been granted by the Appellate Division until then (and, more likely than not, it was granted weeks or months later). Hence, even if this Court were to hypothesize that Petitioner's PCR appeal was fully perfected on the date of his filing of the nunc pro tunc motion, Petitioner's one-year ARDPA period was depleted, at the very least, by 99 days and, more likely, a longer period.

Since Petitioner admitted using 32 days of his one-year ARDPA period before filing his PCR application with the Law Division and, in addition, using 332 days of his one-year ARDPA

period after completing his PCR process but before filing his Petition at bar, the sum of these two periods already yielded 364 days. With the above-detailed "at-least-99-days" period added to these 364 days, the total would render the Petition untimely by, at the very least, 98 days, i.e., by more than three months.

Hence, unless Petitioner qualifies for equitable tolling, his Petition should be dismissed as untimely. Here, Petitioner's equitable tolling argument is unavailing. As the court in Webster v. Ricci, 2013 U.S. Dist. LEXIS 88945 (D.N.J. June 25, 2013), pointed out:

> Here, Petitioner was . . . appraised of every development that took place in his PCR actions, and his submissions verify that he was well aware of all filing deadlines ensuing from the operations of the state law and of his obligation to perfect each of his state court submissions. Analogously, he was well aware about the one-year AEDPA period governing the Petition at bar. Moreover, had he had any doubts, he could have commenced a Section 2254 proceeding . . . years ago to obtain stay and abeyance of his federal petition [so to] preserve his right to seek federal habeas review [when] his PCR proceedings completed. See Rhines v. Weber, 544 U.S. 269 (2005). He also could have filed a "protective" petition setting forth just some claims, see Pace[ v. DiGuglielmo], 544 U.S. [408,] 416 [(2005)], and take advantage of the holding of Mason v. Meyers, 208 F.3d 414 (2000), that allows a § 2254 litigant both an opportunity and the time to withdraw such "protective" petition and file an all-inclusive petition in its place. He elected to do nothing.

Id. at *45-46 (denying equitable tolling and citing Munchinski v. Wilson, 694 F.3d 308, 331 (3d Cir. 2012), for the observation

6

that (a litigant shall not be rewarded for "seeping on his rights").

Moreover, the gap-time between Petitioner's completion of his PCR process and filing of the Petition at bar is crucial for the purposes of this Court's analysis.

> [C]rucially here, having his application for certification as to his . . . PCR application denied by the Supreme Court of New Jersey, he elected to sit on his rights for eleven months [more] . . . . Such conduct presents a striking contrast to that examined in Holland and Jenkins, where litigants who had no information about the decisions reached by the state courts, filed their federal habeas petitions either on the very day they learned about the outcome of their state actions or just a few days later . . . . Here, in light of Petitioner's blatant disregard for the consequences of his systemic and wilful laxness, this Court is constrained to deny him equitable tolling. . . . .

Id., aff'd Webster, 2013 U.S. App. LEXIS 25719, at *1 ("[Petitioner] waited 11 months . . . before filing his § 2254 petition").

This Court is presented with a scenario indistinguishable from that in Webster. When Petitioner completed his PCR process, he well knew that his § 2254 Petition was in danger of becoming untimely, even though he was still well within his AEDPA period. And yet he waited more than ten months to file it. He did not file a "protective" application, nor did he seek a stay during his PCR process. Nor did he not submit a preliminary petition.

He now comes before this Court arguing that this over-ten-months delay should be overlooked, and his failure to meet the

7

deadline should be blamed on the fact that the Office of Public Defender was, allegedly, experiencing a high caseload in mid-2009. Petitioner's position is half-hearted at best and fails to merit equitable tolling. "Finding otherwise would make a mockery of those litigants who did and do go through the very same state court process and yet meet their deadlines or act with utmost diligence and promptness when faced with [truly] extraordinary circumstances in order to ensure the availability of substantive federal habeas review." Webster, 2013 U.S. Dist. LEXIS 88945, at *46.

For the above reasons, the Court will grant Petitioner's motion for reconsideration is form and deny it is substance. See Pena-Ruiz v. Solorzano, 281 F. App'x 110, n.1 (3d Cir. 2008) (a motion for reconsideration is deemed "granted" when the court addresses the merits of that motion; however, the court may reach a disposition identical, either in its rationale or in its outcome, or in both regards, to the one previously reached).

In conjunction with the foregoing, the Court is obligated to determine whether a certificate of appealability ("COA") shall issue. A COA shall issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Here, jurists of reason would not find it debatable that this Court was correct in its finding that the Petition is untimely.  Accordingly, no COA will issue.

An appropriate Order accompanies this Opinion.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Dated: January 7, 2014